UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TYEHIMBA A. ADEYEMI,<br>    *Plaintiff,*<br>        *v.*<br>LIGHTNER, *et al.,*<br>    *Defendants.* | Civil No. 3:12cv1525 (JBA)<br><br>February 12, 2014 |

**RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff Tyehimba A. Adeyemi, brings this action pursuant to 42 U.S.C. § 1983

against Defendants Rikel Lightner and Heidi Greene.[1]  Plaintiff alleges that Defendants

were deliberately indifferent to his serious medical needs in violation of his rights under

the Eighth Amendment.  Plaintiff has filed a motion [Doc. # 13] for summary judgment

and Defendants have filed a cross-motion [Doc. # 28] for summary judgment.  For the

reasons that follow, Defendants' motion is granted and Plaintiff's motion is denied.

**I.    Standard of Review**

A motion for summary judgment may be granted only where there are no issues

of material fact in dispute and the moving party is therefore entitled to judgment as a

matter of law.  *See* Fed. R. Civ. P. 56(a); *In re Dana Corp.*, 574 F.3d 129, 151 (2d Cir.

2009).  The moving party may satisfy his burden "by showing—that is pointing out to the

district court—that there is an absence of evidence to support the nonmoving party's

---

[1] Plaintiff included Jane Doe Grievance Coordinator in the original and amended complaints.  He withdrew all claims against her on March 27, 2013. (*See* Notice of Voluntary Withdrawal [Doc. # 8].)  The Court uses the correct spelling of Defendant Greene's name.

case." *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal citations and quotation marks omitted).   Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial.  *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  He must present such evidence as would allow a jury to find in his favor in order to defeat the motion for summary judgment.  *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).  "Merely verifying the conclusory allegations of the complaint in an affidavit, however, is insufficient to oppose a motion for summary judgment."  *Hopkins v. New England Health Care Employees Welfare Fund*, -- F. Supp. 2d --, No. 3:11-CV-1639 (JCH), 2013 WL 6212160, at *1 (D. Conn. Nov. 25, 2013); *see also Zigmund v. Foster*, 106 F. Supp. 2d 352, 356 (D. Conn. 2000) (same) (citing cases).

When reviewing the record, the court resolves all ambiguities and draws all permissible factual inferences in favor of the party against whom summary judgment is sought.  *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 274 (2d Cir. 2009).  If there is any evidence in the record on a material issue from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is inappropriate.  *Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004). However, the existence of a mere "scintilla" of evidence supporting the plaintiff's position is insufficient to defeat a motion for summary judgment.  *Harvey v. Homebound Mortgage, Inc.*, 547 F.3d 158, 163 (2d Cir. 2008).

II.     Facts[2]

In April 2005, Plaintiff was diagnosed with Hepatitis C, genotype 1, while he was a patient at the Silver Hills Rehabilitation Center in New Canaan, Connecticut.  Hepatitis C is a viral infection which can cause liver damage over time.  The disease can develop into cirrhosis of the liver, but this process normally takes between twenty and thirty years.  Most persons suffering from Hepatitis C exhibit no symptoms until they develop liver problems.

In July 2005, Plaintiff was re-admitted to the custody of the Connecticut Department of Correction.  Between July 2005 and January 2013, Plaintiff was transferred among correctional facilities fifteen times.  With each transfer, he participated in inmate orientation at the new facility and received an Inmate Handbook.  The orientation programs included an explanation of inmate administrative remedies and health services reviews and the handbooks detailed the inmate grievance process.  Since 2005, Plaintiff

---

[2] The facts are taken from Defendants' Local Rule 56(a)1 Statement [Doc. # 28-2] and the exhibits submitted by both parties.  Local Rule 56(a)2 requires the party opposing summary judgment to submit a Local Rule 56(a)2 Statement containing separately numbered paragraphs corresponding to the Local Rule 56(a)1 Statement and indicating whether the opposing party admits or denies the facts set forth by the moving party.  Each admission or denial must include a citation to an affidavit or other admissible evidence.  In addition, the opposing party must submit a list of disputed factual issues.  *See* D. Conn. L. Civ. R. 56(a)2 & 56(a)3.

Despite receiving notice [Doc. # 28-17] of his obligation to respond to the motion for summary judgment and the contents of a proper response, Plaintiff failed to respond to Defendants' motion for summary judgment or to seek an extension of time within which to do so.  Accordingly, Defendants' facts that are supported by the record submitted are deemed admitted.  *See* D. Conn. L. Civ. R. 56(a)1 ("All material facts set forth in said statement will be deemed admitted unless controverted by the statement required to be served by the opposing party in accordance with Rule 56(a)2.").

has filed a number of grievances including requests for health services review.  In three prior lawsuits, Plaintiff acknowledged that he was required to exhaust his institutional remedies before filing a complaint.  *See Adeyemi v. UCONN Health Center*, 3:08cv1334 (JBA); *Adeyemi v. Murphy*, 3:12cv960 (JBA); *Adeyemi v. Palmeri*, 3:12cv1030 (JBA).

During 2009 and 2010, Plaintiff was waiting for hip replacement surgery.  During this time, he was regularly taking Motrin and Feldene for hip pain.  These medications, known as non-steroid anti-inflammatory drugs, can cause liver damage when used extensively.  In addition, Plaintiff had been prescribed Elavil, Zoloft and Depakote for depression and mental health issues.  These medications also can cause liver damage.  To monitor the effect of these medications on his liver, Plaintiff underwent routine tests of liver enzyme levels to monitor his liver function.  High liver enzyme levels would indicate adverse effects of the medications.  High liver enzyme levels also indicate the degenerative effects of Hepatitis C.  Liver function tests in April, May and September 2009 indicated elevated enzyme levels.

On February 16, 2010, Plaintiff went to the Infectious Disease Clinic for a consultation regarding Hepatitis C.  Dr. O'Halloran examined Plaintiff and noted that he suffered from chronic Hepatitis C with mildly elevated liver enzyme levels.  Dr. O'Halloran advised Plaintiff to defer considering treatment for Hepatitis C until after he recovered from the hip replacement surgery.  In March 2010, Plaintiff's liver enzyme levels were normal.

In April 2010, Plaintiff underwent successful hip replacement surgery.   The successful surgery eliminated the need for regular large doses of non-steroid anti-inflammatory drugs.   In addition, therapy with Zoloft, Elavil and Depakote was discontinued in early 2011 at Plaintiff's request.  As Plaintiff was no longer taking drugs on a regular basis that could adversely impact his liver, testing for his liver enzyme levels was discontinued in early 2011.

On February 1, 2011, Plaintiff submitted an Inmate Request Form seeking an appointment with the Infectious Disease Specialist to have the specialist submit a request to the Utilization Review Committee for a liver biopsy to assess liver damage caused by Hepatitis C and immediate antiviral therapy and to prescribe vitamin therapy until the biopsy and antiviral therapy were approved.  Plaintiff specifically noted that he did not consider it necessary that he report for Sick Call at a $3.00 charge.  Instead, he asked that his request be forwarded to the correct department on his behalf.  Plaintiff did not receive a response to the inmate request.  At his deposition, Plaintiff conceded that he possessed an inmate handbook which described the correct procedure to request medical care and that he had been explicitly told in the past that he had to make an appointment at Sick Call to obtain medical services.  He stated, however, that he did not think that he had to follow this procedure, which applies to all inmates, because he had directed the recipient of his inmate request to forward it to the correct department.

When he failed to receive a response to the inmate request, Plaintiff, on May 23, 2011, submitted a request for Health Services Review.  In the request, he complained

about a diagnosis or treatment and referenced two inmate requests submitted on February 9, 2011.  Again, Plaintiff asked that his request be forwarded to the appropriate department and sought immediate examination in accordance with his February 2011 requests.  Plaintiff conceded at his deposition that he again was seeking medical treatment without utilizing the Sick Call procedure.  On June 27, 2011, the Health Services Review Coordinator informally resolved the grievance by forwarding it to the infectious disease nurse at MacDougall-Walker Correctional Center ("MacDougall").  The May 23, 2011 grievance is the only medical grievance that Plaintiff filed.[3]

Defendant Greene is the Infectious Disease Care Manager at MacDougall.  She never received a copy of Plaintiff's request for liver biopsy and treatment for Hepatitis C.  Plaintiff stated at his deposition that there was no evidence that Defendant Greene was aware of his request before being served with the Amended Complaint.

Defendant Lightner, the Health Services Administrator, is the head of administrative support for medical services at MacDougall.  She reviews and disposes of all complaints relating to a practice, procedure, administrative provision or policy, or alleged improper conduct by a health services provider.  She considers the issues in the Health Services Review Form when the inmate checks the box identifying the complaint as dealing with "All Other Health Care Issues."  Inmates seeking review of a diagnosis or treatment will check the "Diagnosis/Treatment" box on the review form and will receive a

---

[3] Plaintiff alleges in his Amended Complaint that he filed a second medical grievance on June 22, 2011.  He conceded at his deposition, however, that the grievance was discarded because it was a duplicate of the May 23, 2011 grievance and only sought a response.

Health Service Review conducted by a physician.  As Plaintiff checked the diagnosis/treatment box on his Health Services Review Form, the request would have been directed to a physician, not to Defendant Lightner.  Plaintiff stated during his deposition that he named Defendant Lightner, not because he had evidence that she was aware of his requests for treatment, but because she controls the operation of the medical department and should know everything that goes on there.

After being served with the lawsuit, Defendant Greene arranged for Plaintiff, who was again incarcerated at MacDougall, to receive a Hepatitis C consultation with Dr. Pillai.  The examination was conducted on March 28, 2013 and April 18, 2013.  Plaintiff denied any history of signs or symptoms suggesting advanced liver disease.  Such symptoms include fatigue, nausea, vomiting, abdominal pain, fluid retention, gastrointestinal bleeding, skin lesions or changes in mental status.  He also denied any prior treatment for Hepatitis C and evidenced no clinical or biochemical evidence of progressive liver disease which would lead to cirrhosis or advanced liver disease.  Liver function studies were normal.  Dr. Pillai discussed various treatment options with Plaintiff including a three-drug regimen, but Plaintiff declined treatment.

In October 2013, Plaintiff underwent his first liver biopsy.  The test revealed moderate liver disease and Plaintiff agreed to begin treatment.  As there are no prior results with which to compare, doctors cannot determine whether Plaintiff suffered any adverse consequences of the failure to undergo a liver biopsy following his February 2011 request.

III.     **Discussion**

A.       **Plaintiff's Motion for Summary Judgment**

In his motion for summary judgment, Plaintiff characterizes this action as brought under section 1983 and also under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., and Section 504 of the Rehabilitation Act ("RA"), 29 U.S.C. §794(a).   Defendants oppose the motion on the grounds that Plaintiff has misstated the nature of the lawsuit and failed to comply with court rules regarding motions for summary judgment.

1.       *Claims Under the ADA and RA*

Plaintiff did not include any reference to the ADA or RA in either his original or amended complaint.  He cannot now amend the operative complaint through a motion for summary judgment.  *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1996) (declining to address merits of claim that "does not appear anywhere in the amended complaint and did not enter the case until [the plaintiff] mentioned it for the first time in her opposition memoranda to the motion to dismiss").  Any ADA and RA claims are not a part of this action.  Plaintiff's motion for summary judgment is denied as to any ADA or RA claims.

2.       *Compliance with Court Rules*

Rule 56(a)1, D. Conn. L. Civ. R., provides:

There shall be annexed to a motion for summary judgment a document
entitled "Local Rule 56(a)1 Statement," which sets forth in separately
numbered paragraphs meeting the requirements of Local Rule 56(a)3 a
concise statement of each material fact as to which the moving party

contends there is no genuine issue to be tried.

Plaintiff has not complied with this rule.  Thus, Plaintiff's motion for summary judgment

is denied without prejudice for failure to comply with court rules.  *See Holtz v. Rockefeller*

*& Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) (acknowledging that district court has

discretion to deny motion for summary judgment for failure to submit required Local

Rule 56 statement).  Although Plaintiff's motion was not properly submitted, the Court

will consider the arguments contained therein and the exhibits, both attached to the

motion and separately submitted, when reviewing Defendants' motion for summary

judgment.

### B.      Defendants' Motion for Summary Judgment

Defendants move for summary judgment on two grounds:   (1) the Eleventh

Amendment bars recovery of damages from Defendants in their official capacities and (2)

Defendants were not personally involved in the incidents alleged in the Amended

Complaint.

#### 1.      *Official Capacity Claims for Damages*

Plaintiff names Defendants in their individual and official capacities but seeks

only damages in the Amended Complaint.   Defendants argue that the Eleventh

Amendment bars recovery of damages from them in their official capacities.

The Eleventh Amendment protects a state actor from an award of damages

against the individual in her official capacity.  *See Kentucky v. Graham,* 473 U.S. 159, 169

(1985) (holding that, absent waiver by the state or valid congressional override, the

Eleventh Amendment bars a damages action in federal court against a state or state official in his official capacity).  Section 1983 does not abrogate the states' sovereign immunity.  *See Quern v. Jordan,* 440 U.S. 332, 343 (1979).  Thus, Plaintiff cannot recover damages from Defendants in their official capacities.  Defendants' motion for summary judgment is granted as to all official capacity claims.

> ### 2.      *Personal Involvement*

Defendants argue that Plaintiff has not presented any evidence of their personal involvement in his claims to support an award of damages against them in their individual capacities.  "It is well settled in this Circuit that 'personal involvement of defendants in alleged Constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal citation omitted).  In addition, supervisory officials may not be held liable for the conduct of their subordinates under a theory of respondeat superior.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999).

For many years it was well settled in this Circuit that there were five ways to demonstrate the personal involvement of a supervisory defendant:  (1) the defendant directly participated in the alleged constitutional violation; (2) after he was informed of the violation through a report or appeal, the supervisory defendant failed to remedy the wrong; (3) the supervisory defendant created a policy or custom pursuant to which the constitutional violation occurred or permitted such a policy or custom to continue; (4) the defendant was grossly negligent in supervising the subordinates who committed the

wrongful acts; or (5) the defendant was deliberately indifferent to the plaintiff's rights by failing to act on information that unconstitutional acts were occurring.  *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).  In addition, a plaintiff must demonstrate an affirmative causal link between the supervisory official's failure to act and his injury.  *See Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002).  Although the Supreme Court, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), rejected the argument that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution," and concluded that "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct," *id.* at 677, the Second Circuit has not yet determined whether this change applies only to claims, like those in *Iqbal*, that involve discriminatory intent.  The majority of district court decisions have declined to extend *Iqbal* absent clear instruction from the Second Circuit.  *See Vazquez-Mentado v. Buitron*, No. 5:12-CV-0797 (LEK/ATB), 2014 WL 318329, at *2 (N.D.N.Y. Jan. 29, 2014) (citing cases).  This Court agrees with this approach and continues to apply the *Colon* standard to claims of supervisory liability that do not involve discriminatory intent.  *See Sosa v. Lantz*, No. 3:09cv869 (JBA), 2013 WL 4441523, at *4 n.6 (D. Conn. Aug. 14, 2013) (discussing split of authority).

Recently, the Second Circuit held that allegations that a supervisory defendant was personally involved in the denial of constitutionally protected rights because the defendant had been apprised of the situation should not be resolved without the development of a factual record.  *See Grullon v. City of New Haven*, 720 F.3d 133, 142 (2d

Cir. 2013).  Accordingly, the Court permitted this case to proceed on the claims against

Defendants until the Court could assess the evidence of personal involvement.

(a)      Defendant Lightner

Plaintiff stated in his deposition that he included Defendant Lightner in this

action because he believes that she controlled the medical department and was aware of

everything that went on there.  (*See* Adeyemi Dep. Tr., Ex. B to Defs.' Loc. 56(a)1 Stmt.

[Doc. # 28-2] at 64.)  The fact that Defendant Lightner is a supervisor alone is insufficient

to demonstrate her personal involvement.

Plaintiff has presented no evidence supporting an inference that Defendant

Lightner participated in the denial of treatment or even knew that Plaintiff had requested

treatment and no treatment was provided.  Plaintiff designated his request for Health

Services Review as a complaint about diagnosis or treatment which resulted in the request

bypassing Defendant Lightner who dealt only with requests for review relating to

administrative issues.   The fact that Defendant Lightner would not have reviewed

Plaintiff's request in the course of her job and, in fact, never saw it shows that she was not

personally involved in the failure to provide treatment for Hepatitis C.  (*See* Lightner Aff.,

Ex. D to Defs.' 56(a)1 Stmt. ¶¶ 4-6.)  Following the response to the grievance, Plaintiff

submitted multiple Inmate Request Forms to the Infectious Disease Specialist requesting

the status of his treatment.  (*See* Mot. for *Nunc Pro Tunc* [Doc. # 18] and attached

exhibits.)  While this likely means they were delivered to the doctor at MacDougall who

12

treated inmates with infectious diseases, neither party actually identifies the recipient of these requests, and there is no evidence Defendant Lightner ever saw them.

Plaintiff has provided no evidence showing that Defendant Lightner was aware of his requests.  Thus, Defendants' motion for summary judgment is granted as to all claims against Defendant Lightner.

(b)      Defendant Greene

Plaintiff alleges that he requested to be seen by the infectious disease specialist and to have a request for liver biopsy and vitamin therapy approved by the Utilization Review Committee.  He further alleges that since March 22, 2010, Defendant Greene failed to conduct tests to determine the extent of his liver damage and has refused him treatment. The only evidence Plaintiff has presented in support of his claim is the June 27, 2011 grievance response on which the Health Services Review Coordinator noted that his request was forwarded to the infectious disease nurse at MacDougall.   Plaintiff has presented no evidence that Defendant Greene received the referral and she has submitted an affidavit stating that she first became aware of Plaintiff's request for treatment and testing when she was served with the Amended Complaint.  (See Greene Aff., Ex. E to Defs.' 56(a)1 Stmt. ¶¶ 3–4.)  At that time, she immediately referred Plaintiff to Dr. Pillai for a Hepatitis C consultation and testing.  (*See id.*)  Plaintiff conceded this point at his deposition, stating that Defendant Greene did not refuse testing and had no knowledge that Plaintiff had requested enzyme level testing before she was served with the Amended Complaint in March 2013.  (*See* Adeyemi Dep. Tr. at 52.)   Absent evidence that

Defendant Greene was aware of Plaintiff's request, or of his inmate requests regarding the status of his treatment, Defendants' motion for summary judgment is granted as to the claims against Defendant Greene for lack of personal involvement.

3.      *Exhaustion of Institutional Remedies*

Even if Plaintiff could demonstrate the personal involvement of either Defendant, summary judgment is warranted because he failed to exhaust his institutional remedies before commencing this action.

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), imposes a requirement that inmates exhaust their administrative remedies before filing an action in federal court concerning any aspect of prison life.  *See Porter v. Nussle*, 534 U.S. 516, 532 (2002).  An inmate may be excused from the exhaustion requirement "only where (1) administrative remedies were not in fact available; (2) prison officials have forfeited, or are estopped from raising, the affirmative defense of non-exhaustion; or (3) 'special circumstances . . . justify the prisoner's failure to comply with the administrative procedural requirements.'" *Adekoya v. Federal Bureau of Prisons*, 375 F. App'x 119, 121 (2d Cir. 2010) (quoting *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004)).  The courts have found special circumstances only where the failure to exhaust administrative remedies was caused by a reasonable but erroneous interpretation of prison regulations.  *See Bennett v. James*, 737 F. Supp. 2d 219, 227 (S.D.N.Y. 2010), *aff'd* 441 F. App'x 816 (2d Cir. 2011).

Medical administrative remedies are governed by Administrative Directive 8.  The inmate must first seek informal resolution of the issue and, if unsuccessful, then submit a

grievance or request for Health Services Review, followed by an appeal.   (*See* Administrative Directives 8.9, Ex. K to Defs.' 56(a) 1 Stmt.)  Plaintiff acknowledges in his deposition that (1) he attended orientation whenever he was transferred to a different correctional facility and that inmate grievance procedures were explained during orientation; (2) he received inmate handbooks whenever he was transferred to a different correctional facility and that the handbooks explained the grievance procedures; (3) he had previously filed grievances including requests for Health Services Reviews; and (4) he was aware of the exhaustion requirement for filing a lawsuit in federal court.   (*See* Adeyemi Dep. Tr. at 12–15.)

Plaintiff has exhausted a claim to obtain a liver biopsy and treatment for Hepatitis C.  That claim was contained in his May 23, 2011 grievance.  The claims in the Amended Complaint, however, are different.   Neither Defendant is a doctor.   Thus, neither Defendant was able to order a liver biopsy or prescribe treatment Hepatitis C.  Plaintiff's claims in this action are that Defendant Greene failed to conduct tests to ascertain the degree of liver damage and did not refer him for Hepatitis C treatment and that Defendant Lightner never responded to the many inmate request forms he submitted seeking treatment.

Despite his knowledge of the exhaustion requirement, Plaintiff stated at his deposition that he did not file a grievance regarding Defendant Greene's failure to conduct tests and refer him for treatment and conceded that nothing prevented him from doing so.  (*Id.* at 55.)  In addition, Plaintiff stated that he did not file grievances over the

lack of response to his many requests for treatment.  (*Id.* at 42–49.)  Defendants have submitted copies of the grievance logs as evidence that Plaintiff filed no other grievances regarding his medical care.  (*See* Grievance Logs, Exs. H, I, & J to Defs.' 56(a)1 Stmt.) Plaintiff has provided no evidence in opposition to the motion for summary judgment suggesting any special circumstances that would warrant excusing his failure to exhaust his administrative remedies.

Defendants' motion for summary judgment is granted on the alternative  ground that Plaintiff failed to exhaust administrative remedies.  *See Baldwin v. Arnone*, No. 3:12cv243 (JCH), 2013 WL 628660, at *5–6 (D. Conn. Feb. 19, 2013) (granting summary judgment for failure to exhaust administrative remedies where grievance log demonstrate no grievance was filed).

## IV.    Conclusion

Plaintiff's Motion [Doc. # 13] for Summary Judgment is DENIED without prejudice for failure to comply with court rules.  Defendants' Motion [Doc. # 28] for Summary Judgment is GRANTED.  The Clerk is directed to enter judgment and close this case.

IT IS SO ORDERED.

        /s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 12th day of February, 2014.